## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JEROME WANT                         \*

Plaintiff                              \*

v                                  \*             Civil Action No. JFM-16-1854

KEVIN CERRONE, et al.           \*

Defendants                     \*
                                     \*\*\*

### MEMORANDUM

On July 22, 2016, this court issued an order granting plaintiff to and including August 12, 2016, to file an amended complaint in the above-entitled action. ECF 10. Plaintiff has filed a response and an addendum addressing the matters outlined in this court's order. ECF 12 and 13.

Plaintiff first asserts that this court is mistaken regarding the requirement that he provide names of litigants who are representative of the putative class action and states that "it is the defendant who is required to provide names of those who are potential litigants in a class matter." ECF 12 at p. 1. He further states that riders on public transportation do not wear name tags and "most are unwilling to identify themselves to others and many are afraid of retaliation." *Id.* Notwithstanding those observations, plaintiff provides the "names of several others who have provided their names for the purpose of this complaint." *Id.* No signatures are provided from the individuals named.

In the addendum, plaintiff states "in response to this court's request for names of those who have engaged in discrimination, it would seem clear that those persons cited in the header of [the] complaint as defendants . . . were the persons responsible for the discrimination." ECF 13 at p. 1. He contends that the names of "drivers and other personnel of the Washington Co. Transit" will be obtained through the discovery process. *Id.* Plaintiff further suggests that this

court is being "deliberately obstructive" with its orders requiring plaintiff to amend the complaint. *Id.*

The complaint and addendum thereto asserts with respect to plaintiff Jerome Want that:

1. A driver of a fixed route bus attempted to drop him off at "several hundred yards" away from an intersection which would have required Want to walk up a long hill. ECF 1 at pp. 6 – 7.

2. In "late 2011" the driver for para transit picked Want up 30 minutes early requiring him to rush to finish his shopping. Want states the driver came into the store to tell him she was there and that drivers are prohibited from leaving the bus. Once he arrived at the bus with four bags of groceries, he was chastised by the driver for attempting to retrieve two bags from the sidewalk while leaning out of the bus holding onto the interior handle. ECF 9 at pp. 1 – 2.

3. On May 3, 2012, the bus was more than an hour late to transport Want to a medical appointment. He states he arrived at the doctor's office at 11:30 a.m. for a 10:40 a.m. appointment, but the driver dropped other riders off at places within the same medical center first, making Want so late for his appointment it was cancelled. Want states he then had to wait a full hour for a return para transit bus home. *Id.* at p. 2.

4. On August 2, 2012, a bus was supposed to pick Want up at 11:15 a.m. following a medical appointment, but was forty minutes late. Want was required to stand outside for forty minutes waiting for the bus. *Id.*

5. On February 3, 2015 at 1:30 p.m., Want was picked up at Walmart by a driver named David who informed Want that he had to make two other pick-ups before taking Want home with his groceries. One destination was in the eastern part of the county and Want was picked up in the western part of the county. Want's destination was in the southern part of the county. Because of his concern regarding the effect a one-hour ride on the bus would have on his back condition and the groceries he purchased, Want asked the driver to call the office to ask if he could let Want off at or near a transfer center on the way to the eastern part of the county. When the driver called, the office asked that Want himself call. Want states he called for fifteen minutes and no one answered the phones. *Id.* at pp. 2 – 3.

6. On March 3, 2015, Want states that a bus that was scheduled to pick him up at a store at 1:30 p.m. never arrived resulting in him standing in thirty degree weather for one and one-half hours. Want saw a para transit bus at the other end of the shopping center, walked approximately 200 yards to investigate and found it unattended. In an effort to locate the driver, Want went into another store and had the driver paged. When he returned the bus had left. After retrieving his packages, Want took a "fixed route bus" which dropped him off at the regular bus stop near his apartment complex, 150 yards from his apartment. When his merchandise fell to the ground because the shopping bag

2

broke, Want was required to make two additional round trips to retrieve it. *Id.* at p. 3.

7. On November 18, 2015, a driver dropped Want off in the wrong location at Hagerstown Community College requiring Want to carry a desktop computer up 25 steps from the street to the doors of the building only to discover that the place he needed to be was on the opposite side of campus. When Want complained that the driver had not been provided with proper instructions, an alternate driver picked him up from the location and told him there would be no charge for the ride. He states "I could have further injured my back." *Id.* at p. 4.

8. On October 13, 2015, a para transit driver named Christina could not find Want's apartment, did not call Want for directions, and did not ask at the office for the apartment complex for directions. Want required the ride to appear as a witness in court. He claims after waiting for an hour he called the office to inform them he would be taking the regular bus. As he was waiting for the bus, a supervisor, Stephanie Overcash, drove to the bus stop and picked Want up in a county commuter car. Want was 50 minutes late for court and the case was continued in part due to his absence. *Id.* at p. 5.

9. On October 19, 2015, Want was scheduled to be picked up at 10:45 a.m., but no one arrived until 12:15 p.m. when a driver named Doris picked him up in a County Commuter Car and informed him that schedules were too tight for the drivers to comply with it. Want's calls to the para-transit office went unanswered. *Id.* at pp. 5 – 6.

10. On February 6, 2016, a driver was 40 minutes late picking Want up because he went to the wrong store. *Id.* at p. 6.

11. On July 12, 2016, the driver was one hour and twenty minutes late for a 1:30 pick up for Want. He states he was left standing in the heat for 35 minutes without a place to sit in violation of policy which prohibits keeping elderly and handicapped from waiting more than 15 minutes. *Id.*

Plaintiff further relates that on two instances in 2016 he attempted to get a bus driver named Ricki to enforce rules requiring able-bodied riders to surrender a reserved seat for handicapped and elderly riders. ECF 9 at p. 7. He states that the driver became irate with him and threatened to throw him off the bus. *Id.* Plaintiff also raises generalized claims that Washington County Transit fails to provide reliable, on-time service for para-transit riders on para-transit buses and fixed route buses (ECF 1, p. 1); fails to properly supervise drivers and office staff; fails to accept and act on feedback from riders; fails to ensure staff are qualified by paying "necessary wages and incentives to attract the necessary pool of competent workers;"

3

(*id.*); fails to provide a sufficient number of para-transit buses to meet the needs of para-transit riders (*id.* at p. 3); and fails to provide sufficient seats or shelters to accommodate elderly and handicapped riders when fixed route buses do not arrive in a timely manner (*id.*).

Plaintiff's continued assertion that the claims alleged, together with the additional information regarding the names of other riders recently provided, constitutes a basis for the instant case to be a class action lawsuit is erroneous. "The party moving for class certification bears the burden of demonstrating that its proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re BearingPoint, Inc. Sec. Litig.,* 232 F.R.D. 534, 538 (E.D.Va.2006) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997)). Under Federal Rule of Civil Procedure 23(a) four factors must be established for a putative class action to be certified as a class action by this court. Those factors are: "(1) 'numerosity'—that the class is so numerous that joinder of all members would be impracticable; (2) 'commonality'—that questions of law or fact are common to the class; (3) 'typicality'—that the claims or defenses of the representative party are typical of those of the class; and (4) 'adequacy'—that the representative party fairly and adequately protect the interests of the class." *In re Mills Corp. Sec. Litig.,* 257 F.R.D. 101, 104 (E.D. Va. 2009).

It is the fourth factor that cannot be established in this case as plaintiff Want is not an attorney who has been authorized to assert claims on behalf of others and there is no evidence that any other putative plaintiff mentioned has consented to the filing of a lawsuit (*i.e.,* none of the pleadings filed have been signed by any other party, nor has any other party filed a complaint similar to the one filed by plaintiff Want). Thus, the instant complaint will be analyzed based only on those claims asserted by Want on his own behalf.

Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level and require "more than labels and conclusions," as "'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 561.

Plaintiff filed this complaint in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1), which permits an indigent litigant to commence an action in this court without prepaying the filing fee. To guard against possible abuses of this privilege, the statute requires dismissal of any claim that is frivolous or malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). This court is mindful, however, of its obligation to liberally construe self-represented pleadings, such as the instant Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating such a complaint, the factual allegations are assumed to be true. *Id.* at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented."). In making this determination, "[t]he district court need not look beyond the complaint's allegations . . . . It must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White*, 886 F.2d 721, 722-723 (4th Cir. 1989).

It is well established that private parties may sue to enforce Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002); *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir. 1994); *Davis v. Southeastern Community Coll.*, 574 F.2d 1158, 1159 (4th Cir. 1978), *rev'd on other grounds*, 442 U.S. 397 (1979); *cf. Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582 (1983) (establishing that Title VI of the Civil Rights Act of 1964 supports a private right of action). To prevail under an ADA Title II claim, "a plaintiff must show that [he or] she was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (emphasis omitted). To that end, the Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Baltimore*, 515 F.3d 356, 362 (4th Cir. 2012).

The claims asserted by plaintiff do not present a colorable claim under Title II of the ADA or the Rehabilitation Act. On the face of the complaint it is clear that plaintiff has not been excluded from a program or service offered by a public entity by reason of his disability. Rather, the claims asserted describe isolated incidents where the services offered and received by plaintiff were sub-par and plaintiff was dissatisfied with the channels of communication to voice his concerns. While a case might be stated under either the Rehabilitation Act or Title II of the ADA where inefficiencies of the public service are so egregious that it amounts to a failure to accommodate the disabled persons for whom it was established, that scenario is not portrayed by the allegations asserted by Want. "Title II, . . . cannot be read to impose strict liability on public entities that neither caused plaintiffs to be excluded nor discriminated against them." *Bacon v.*

*City of Richmond, Virginia*, 475 F.3d 633, 639–40 (4th Cir. 2007). Here plaintiff admits that the late arrivals of transportation were the result of driver incompetence and inefficiency and not the result of discrimination. Indeed, on some of the occasions when plaintiff's transportation was late arriving he admits that a county employee picked him up in a county commuter car. The delays and inability to communicate with staff described by plaintiff are familiar complaints voiced by non-disabled riders of public transportation and do not state a colorable claim of discrimination.

Plaintiff's invocation of 42 U.S.C. §1983 is without any factual basis. ECF 1 at p. 5. A claim under §1983 requires a showing that the defendants, while acting under color of law, subjected plaintiff to "the deprivation of any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. §1983. Without a colorable claim established under the ADA or the Rehabilitation Act, the claim asserted under 42 U.S.C. §1983 fails; Want does not allege a constitutional rights violation, nor can he on the facts as alleged.

There is no allegation that plaintiff Want is elderly, thus any claim asserted under the "Elder Justice Act" (ECF 1 at pp. 5 – 6) is an unauthorized claim asserted on behalf of persons not parties to this case and shall be dismissed without prejudice. To the extent that plaintiff has a possible state tort claim sounding in negligence (ECF 1 at pp. 6 - 10) for the alleged injuries he suffered as a result of the failures to provide him with timely transportation, those claims shall be dismissed without prejudice.

A separate order follows.

_August 25, 2016_
Date

_J. Frederick Motz_
J. Frederick Motz
United States District Judge